LAWRENCE G. PAPALE, ESQ. (67068)
LAW OFFICE OF LAWRENCE G. PAPALE
1308 Main Street, Suite 117
Saint Helena, CA  94574
Telephone:  (707) 963-1704
E-mail: lgpspale@papalelaw.com

JOSEPH M. ALIOTO, SBN 42680
Theresa D. Moore, SBN 99978
Jamie L. Miller, SBN 271452
ALIOTO LAW FIRM
225 Bush Street, 16th Floor
San Francisco, CA  94104
Telephone:  (415) 434-8900

[Additional Counsel Listed on Signature Page]
Attorneys for Plaintiff Linda Williams

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA WILLIAMS, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATION OF THE SHERMAN ACT (15 U.S.C. §1) AND THE CALIFORNIA CARTWRIGHT ACT (California Business and Professions Code §16720) |
| vs. | |
| AMERICAN AIRLINES, INC., DELTA AIR LINES, INC., SOUTHWEST AIRLINES CO., UNITED AIRLINES, INC., | |
| Defendants. | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Linda Williams, on behalf of herself and all others similarly situated in the United States ("Plaintiffs"), brings this action for treble damages and injunctive relief under the federal antitrust laws of the United States against Defendants American Airlines, Inc. ("American"), Delta Air Lines, Inc. ("Delta"), Southwest Airlines Co. ("Southwest"), and United Airlines, Inc. ("United") (collectively referred to herein as "Defendants"), demanding trial by jury, and complaining and alleging as follows:

## NATURE OF THE CASE

1.      This lawsuit is brought as a class action on behalf of individuals and entities that purchased tickets for air travel in the United States from Defendants, their predecessors, or their controlled subsidiaries and affiliates during the period beginning no later than January 1, 2011 and continuing through the present (the "Class Period"). Plaintiff alleges that during the Class Period the Defendants engaged in an conspiracy for the purpose of fixing prices, allocating markets and territories, and committing other anticompetitive practices designed to unlawfully fix, raise, maintain or stabilize prices for Domestic Airfare in the United States.

2.      Plaintiff alleges that Defendants' cartel and concerted anticompetitive conduct is in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. § 1, 3, which prohibit restraints of trade. Plaintiff seeks treble damages and injunctive relief on behalf of themselves and all other similarly situated purchasers of Domestic Airfare during the Class Period.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §15**,** 26, under Sections 1 and 3 of the Sherman Act, 15 U.S.C §§1, 3, and under 28 U.S.C. §§1331 and 1337.  This court has subject matter jurisdiction of the California law claims asserted in this action under 28 U.S.C. §§ 1332(d) and 1367, in that the amount in controversy exceeds the sum of $5 million exclusive of interest and costs, and members of the California class are citizens of states different from defendants.

4.      This Court has personal jurisdiction over Defendants because they systematically and continually conduct business in the United States, including marketing, advertising, and sales directed to residents here.

5.      Venue is proper in this Judicial District pursuant to Section 12 of the Clayton Act, 15 U.S.C. §22 and pursuant to 28 U.S.C. § 1391(b), (c) and (d) because, during the Class Period, one or more of the Defendants resided, transacted business, was found, or had agents in, this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred

**CLASS ACTION COMPLAINT**

in this district, and a substantial portion of the affected portion of the interstate trade and commerce described below has been carried out in this district.

## PLAINTIFF

6.     Plaintiff LINDA WILLIAMS ("WILLIAMS") purchased airline tickets for domestic air transportation services from one or more of the Defendants during the Class Period. Williams is a California resident. Williams purchased these airline tickets from the Defendants. As a direct and proximate result of Defendants' anticompetitive conduct alleged herein, Williams paid supracompetitive prices for Domestic Airfare during the Class Period and as such, has suffered injuries directly related to the anticompetitive conduct of the Defendants. Williams will also continue to suffer harm if the Defendants are not enjoined from continuing their unlawful conduct. Williams' claims are typical of the claims of the members of the proposed class.

## DEFENDANTS

7.     Defendant DELTA AIR LINES, INC. ("DELTA") is a Delaware corporation with its corporate headquarters located at 1030 Delta Boulevard, Atlanta, Georgia. Delta Air Lines is one of the largest United States air carriers with over 5,400 flights daily and a network that includes 333 destinations in 64 countries around the world. Delta Air Lines is the end result of multiple mergers, the most recent and one of the largest being its 2008 merger with Northwest Airlines, which was completed on January 31, 2010. As a result of these mergers, Delta Air Lines is one of the four largest United States air carriers, the Defendants in this case, which, combined, control over 80% of the domestic passenger air transportation services market in the United States.  The combination of Delta and Northwest was a merger of significant rivals which resulted in a substantial lessening of competition in the passenger airline market.

8.     Defendant UNITED AIRLINES, INC. ("UNITED") is a Delaware corporation with its corporate headquarters at 233 S. Wacker Drive, Chicago Illinois 60606. United Airlines is the operating arm of United Continental Holdings, the parent company created in 2010 after the merger of United Airlines and Continental Airlines. The newly merged company maintained the United name but created new branding that merged the imagery of United Airlines and Continental Airlines. For the fiscal year ending December 31, 2014, United Airlines reported total operating revenues of $38.9 billion and net income of $1.132 billion. The combination of United Airlines and Continental Airlines was a merger of significant rivals which resulted in a substantial lessening of competition in the passenger airline market.

9.      Defendant SOUTHWEST AIRLINES CO. is a Texas corporation with its corporate headquarters located at 2702 Love Field Drive, Dallas, Texas. Southwest Airlines is one of the largest United States air carriers and operates more than 3,400 flights per day. Southwest controls approximately 18% of the United States domestic market. For the fiscal year ending December 31, 2014, Southwest Airlines reported total operating revenues of $18.6 billion and net income of $1.136 billion. Among the Defendants, Southwest is the only airline to use the "point-to-point transit" system as opposed to the "hub and spoke" system used by the other three and the majority of domestic United States air carriers.  In 2011 Southwest Airlines merged with AirTran. The combination of Southwest Airlines and AirTran was a merger of significant rivals which resulted in a substantial lessening of competition in the passenger airline market.

10.     Defendant AMERICAN AIRLINES, INC. ("AMERICAN") is a Delaware corporation with its corporate headquarters located at 4333 Amon Carter Blvd., Fort Worth, Texas. American Airlines, Inc. is a subsidiary of American Airlines Group, Inc., which was created on December 9, 2013 through the merger of American and US Airways, forming the largest airline in the world measured by passengers flown, fleet size and revenue, with more than 6,700 daily flights to 336 location in 56 countries worldwide. For the fiscal year ending December 31, 2014, American Airlines reported total operating revenues of $42.6 billion and net income of $2.8 billion. The combination of American Airlines and US Airways was a merger of significant rivals which resulted in a substantial lessening of competition in the passenger airline market.

## CO-CONSPIRATORS

11.     Various other airlines, trade associations, persons and/or entities, not named as Defendants herein, have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy and/or in furtherance of the anticompetitive, unfair or deceptive conduct alleged herein. The allegations in this Complaint apply equally to these unnamed co-conspirators.

12.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

13.     Each of the Defendants named herein acted as the agent or joint-venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

## INTERSTATE TRADE AND COMMERCE

14.     Throughout the Class Period, there was a continuous and uninterrupted flow of airline ticket sales in interstate and international commerce throughout the United States.

15.     Defendants' unlawful activities, as described herein, took place within the flow of interstate commerce to domestic airline ticket purchasers located in states other than the states in which Defendants are located, as well as throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce, including the United States Domestic Airfare market.

## CLASS ACTION ALLEGATIONS

16.     Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons or entities that purchased air passenger transportation services for domestic flights within the United States from Defendants or any of their predecessors, subsidiaries, parents, affiliates or other related companies, at any time between January 1, 2011 and the present. Excluded from the Class are Defendants and their employees, affiliates, parents, subsidiaries, and co-conspirators, whether or not named in this Complaint, and the United States government.

17.     This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.     The Class is ascertainable and there is a well-defined community of interest among members of the Class;

b.     Based upon the nature of trade and commerce involved and the number of purchasers of Domestic Airfare from Defendants and their co-conspirators, Plaintiff believes that the members of the Class number in the thousands, and therefore are sufficiently numerous that joinder of all Class members is not practicable;

**5**
**CLASS ACTION COMPLAINT**

1         c.      Plaintiff's claims are typical of the claims of the members of the Class

2  because Plaintiff purchased Domestic Airfare from one or more of the Defendants or their co-

3  conspirators, and therefore Plaintiff's claims arise from the same common course of conduct

4  giving rise to the claims of the members of the Class and the relief sought is common to the

5  Class;

6         d.      The following common questions of law or fact, among others, exist as to

7  the members of the Class:

8               i.      Whether Defendants formed and operated a combination or

9                       conspiracy to fix, raise, maintain, and/or stabilize the prices of, or

10                       allocate the market for, Domestic Airfare sold in the United States

11                       during the Class Period;

12              ii.      Whether the combination or conspiracy caused prices for

13                       Domestic Airfare to be higher than they would have been in the

14                       absence of  Defendants' conduct;

15             iii.      The operative time period of Defendants' combination or

16                       conspiracy;

17             iv.      Whether Defendants' conduct caused injury to the business or

18                       property of Plaintiff and the members of the Class;

19              v.      The appropriate measure of the amount of damages suffered by

20                       the Class;

21              vi.      Whether Defendants' conduct violates Section 1 and 3 of the

22                       Sherman Act and the California Cartwright Act;

23             vii.      Whether Defendants took steps to actively conceal their

24                       conspiracy; and

25            viii.      The appropriate nature of class-wide equitable relief.

26         e.      These and other questions of law and fact common to the members of the

27  Class predominate over any questions affecting only individual members, including legal and

28  factual issues relating to liability and damages;

f.      After determination of the predominant common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

g.      Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent it and the Class;

h.      A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical. The damages suffered by the individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures it would not be feasible for Class members to redress the wrongs done to them. Even if the Class members could afford individual litigation, the court system could not. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and the court system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision in a single court;

i.      Defendants have acted, and/or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and

j.      In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

## THE UNITED STATES AIRLINE INDUSTRY

18.    This litigation involves the United States Domestic Airfare Market consisting of all tickets for passenger air travel sold domestically within the United States.

19.    Each Defendant possesses significant market share in the United States Domestic Airfare market. The principal competitors of the Defendants in the Domestic Airfare market are therefore each other.  Domestic travel within the United States is controlled by a small group of airlines, particularly in the aftermath of consolidation within the industry in the last decade.

**CLASS ACTION COMPLAINT**

Defendants American, Delta, United and Southwest, combined, control approximately 80% of the market.

20.     The Domestic Airfare Market is huge, with annual revenues in excess of $150 billion. In 2014, over 600 million passengers were transported domestically by air. The domestic passenger air transportation market is rapidly growing. From 2010-2015, the domestic passenger air transportation market grew 3.5% per year and employed over 375,000 people. Business has grown significantly in the aftermath of the market recession of 2007-2008 caused by the subprime mortgage crisis. In order to aggressively increase profits, the Defendants during this time entered into the illegal "capacity discipline" and supply restraint agreements that are the subject of this complaint.

## DEFENDANTS' ANTICOMPETITIVE CONDUCT

21.     Beginning at least as early as January 1, 2011, the exact date being unknown to Plaintiff, and continuing thereafter to present day, Defendants and their co-conspirators engaged in an unlawful conduct, combination or conspiracy with the  purpose and effect of fixing prices, allocating markets and customers, and committing other anticompetitive practices designed to unlawfully fix, raise, maintain and/or stabilize prices of Domestic Air Travel in a *per se* violation or unreasonable restraint of trade in violation of Sections 1 and 3 of the Sherman Act. The Defendants' conduct was meant to did in fact have the effect of inflating, fixing, maintaining, manipulating and stabilizing the price of Domestic Airfare through illegal agreements to restrict the supply of seats, which is referred to in the industry as "capacity discipline."

22.     The barriers to entry into the Domestic Airfare Market are extremely high and the market is highly centralized in that domestic passenger air transportation is dominated by four major players.

23.     These significant barriers to entry into the domestic passenger air transportation services industry, in combination with consolidation in that industry, have facilitated the illegal anticompetitive conduct and allowed the Defendants to develop, implement and enforce illegal agreements to restrain and restrict capacity and supply. Those significant barriers to entry include: (a) established market positions of the incumbent Defendants, (b) substantial invested costs in maintaining an airline fleet and the personnel to operate that airline fleet, (c) development and maintenance of a robust flight system with defined routes, (d) development and maintenance of a global sales and marketing operation, (e) existing relationships with

passengers, (f) access to skilled and experience personnel with the knowledge to operate and maintain an airline operation, (g) access to the technology and equipment necessary to successfully operate and maintain an airline fleet, and (h) access to the resources and money necessary to successfully provide air transportation services within the United States in a safe manner.

24.     Regulation by the Federal Aviation Administration ("FAA") and other regulatory agencies also pose significant barriers to entry. Any new entrant into the domestic passenger air transportation services market would need to be able to navigate a complex regulatory environment.

Consolidation in the Market

25.     The United States domestic passenger air transportation services market is highly concentrated and has become significantly more concentrated because of mergers. Since deregulation in 1978 there have been many mergers and acquisitions: Delta Air Lines merged with Western Airlines; United Airlines acquired Pan American Airlines' Pacific routes; Northwest acquired Republic Airlines; American Airlines and Air California merged; American acquired TWA; America West acquired US Airways; Delta acquired Northwest; United acquired Continental; Southwest merged with AirTran; and American Airlines merged with US Airways.

26.     In the last few years, there have been four mega-mergers. Each merger resulted in fare increases and capacity decreases.

27.     Those four mega-mergers were the 2008 Delta-Northwest merger which created the largest airline in the world (a distinction that lasted for five years until the most recent mega-merger), the 2010 Continental-United mega-merger, the 2011 Southwest Airlines mega-merger with AirTran, and most recently the 2013 American-US Airways mega-merger (which supplanted Delta-Northwest as the largest airline in the world.)

28.     Consolidation in the domestic airline industry reduced competition and facilitated the creation and implementation of collusive agreements in violation of United States antitrust laws.  Air fares have increased nationwide as a result of these mega-mergers.

United Airlines – Continental Airlines Merger

29.     On May 3, 2010, United Airlines and Continental Airlines announced their planned merger. The merger would create a combined company with an equity value of $8.3 billion.

30.     Combined, the post-merger United Airlines would have more than 203 billion domestic revenue passenger miles ("RPMs"). Domestically, the combined RPMs of United and Continental comprised 21% of domestic capacity.

31.     The merger resulted in lower capacity and fewer seats in the sky, which, in turn, resulted in higher ticket fares for consumers. The new combined airline dominated traffic in 17 airports in the United States

32.     Since the merger in 2010, the combined firm has reduced capacity at nearly all of its major hubs and at many other airports where the two airlines previously competed. This reduction in capacity had the expected and immediate impact of causing airline fares to increase. The combination of United Airlines and Continental Airlines was a merger of significant rivals which resulted in a substantial lessening of competition in the domestic passenger air transportation market.

American Airlines - US Airways Merger

33.     In 2013 the merger between American Airlines and US Airways created the new largest airline in the world with a value of $11 billion.

34.     The United States Department of Justice, Antitrust Division ("DOJ"), challenged the merger on August 13, 2013 in *United States vs. U.S. Airways Group, Inc.*, No. 1:13-cv-01236 (D.D.C.), noting in its complaint that an internal US Airways memo referred to industry consolidation as the "New Holy Grail".  The DOJ complaint further noted that the number of major airlines had dropped from nine to five from 2005 to 2013. With the merger of American Airlines and US Airways, the DOJ argued that the domestic airline industry was getting closer to its holy grail by only having four major domestic airline competitors.

35.     Since the merger closed, the United States is now left with just four major airlines that will dominate the United States market.  As much as 83% of the United States domestic airline industry is controlled by just four airlines.

36.     Since the merger closed, Defendants have reduced their overall capacity which, in turn, has resulted in higher ticket fares for consumers. The combination of American Airlines and US Airways was a merger of significant rivals which resulted in a substantial lessening of competition in the passenger airline market.

Domestic Air Transportation Services are Interchangeable

37.     Air travel within the United States has become increasingly homogenous and interchangeable. There are only two major manufacturers of airplanes and all of the airlines are

reducing services in order to cut costs and reduce expenses. None of the Defendants have access to technology that the other Defendants cannot match. Price therefore has become the principal means of competition between and among the Defendants, all of whom know that passengers will, in most situations, choose the cheapest flight between their starting destination and their intended final destination.

38.     The existence of the internet and services such as Expedia and Priceline have made pricing in the Domestic Airfare Market transparent such that pricing is generally the only point of competition that Defendants can rely on. The Defendants know that domestic passenger air transportation services in the United States are fungible, with passengers easily able to transition from one airline to another if a disparity in pricing emerges between the Defendants.

39.     As a result, one of the very few mechanisms available to the Defendants to artificially inflate prices is to enter into illegal anticompetitive agreements. An agreement to restrain capacity and/or supply is a fundamental antitrust violation that inevitably will lead to the price of Domestic Airfare being artificially inflated.

<u>Inelastic Demand for Domestic Airfare</u>

40.     The demand for domestic passenger air transportation services is relatively inelastic. In economic terms, inelastic demand means that the demand for a product is not significantly affected by price changes. In this case, inelastic demand means that the demand for domestic passenger air transportation services does not decrease significantly in response to price increases by the Defendants. Inelastic demand is critical to the success of the "capacity discipline" and supply restraint agreements entered into by defendants since the restriction on supply relies on the inelasticity of demand to cause the price of Domestic Airfare to become artificially inflated. With demand being inelastic and growing, the lack of growth in supply will cause prices for Domestic Airfare to become artificially inflated. Senator Richard Blumenthal (D-Conn.) made this point in an interview, stating that it is "Economics 101. Reducing supply with rising demand means increased prices ... consumers are suffering rising fares and other added charges that seem to be the result of excessive market power concentrated in too few hands and potential misuse of that power."

41.     In a competitive and free market, under fundamental economic principles, one or more of the Defendants would increase capacity to capture more market share. The fact that none has done so is contrary to sound economic policy and therefore is persuasive proof of an illegal antitrust conspiracy.

42.     As a result of this inelastic demand for Domestic Airfare, the Defendants know that if they can remain united in maintaining "capacity discipline" and otherwise restraining and restricting supply, they will be ultimately be successful in artificially inflating, raising, maintaining and/or stabilizing the price of Domestic Airfare within the United States.

### Defendants' Statements Regarding Anticompetitive Acts

43.     During the annual IATA meeting in June of 2015, several CEOs of the domestic United States airlines spoke publicly about the need for "discipline" within the industry. The IATA meeting took place in Miami, Florida where many of the highest executives of the four largest domestic airlines met to discuss the airline business. It provided an excellent forum and opportunity for collusion.

44.     Defendant Delta's President, Ed Bastian, said at that meeting that Delta Air Lines is "continuing with the discipline the marketplace is expecting."

45.     Defendant American's CEO, Douglas Parker, stated that the airlines had learned their lessons from past price wars, "I think everyone in the industry understands that."

46.     Air Canada's CEO, Colin Rovinescu, stated that "People were undisciplined in the past, but they will be more disciplined this time."

47.     In response to pressure from the other three airlines, Southwest agreed to remain part of the cartel and dropped its plan to increase capacity. In a statement, Southwest's CEO Kelly, stated that "[w]e have taken steps this week to begin pulling down our second half  2015 to manage our 2015 capacity growth . . ."  This is code for engaging in "capacity discipline", a form of anticompetitive supply restraint.

## VIOLATIONS ALLEGED

### First Claim for Relief
### (Violation of Sections 1 and 3 of the Sherman Act)

48.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

49.     Beginning at a time unknown to Plaintiff, but no later than January 1, 2011, and continuing through the present, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain and/or stabilize the prices for domestic airfare, and to allocate markets and customers through "capacity discipline" which had the purpose and effect of artificially inflating the price of domestic airfare purchased by Plaintiff and the other Class Members, in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§1, 3.

50.     In formulating and effectuating the continuing policies, agreements, contracts, understandings, combinations and/or conspiracy, Defendants and their co-conspirators did those things that they conspired to do, including but not limited to those acts, practices and course of conduct set forth in this complaint, such as the following:

a.      Agreed to and did in fact fix, raise, maintain and stabilize the capacity and price of Domestic Airfare in the United States;

b.      Agreed to and did in fact allocate geographic markets and customers for domestic air transportation services in the United States;

c.      Participated in meetings, phone conferences and other communications to exchange information used by Defendants to formulate and implement their contact, combination and conspiracy to fix, raise and maintain prices of Domestic Airfare and allocate markets and customers for domestic air transportation services in the United States;

d.      Signaled and communicated the formulation and implementation of their contract, combination and conspiracy to fix, raise and maintain prices of Domestic Airfare and allocate markets and customers for domestic air transportation services in the United States;

e.      Agreed to develop, implement, monitor, police and enforce illegal "capacity discipline" agreements designed to create an artificially high price for Domestic Airfare;

f.      Shared and exchanged information on capacity and price of Domestic Airfare to the detriment of consumers;

g.      Implement and monitor the conspiracy amongst the Defendants to ensure full compliance with the anticompetitive conduct and to punish violators;

h.      Restrained and restricted the supply of seats in order to restrain and restrict supply and therefore artificially inflate the price of Domestic Airfare.

i.      Refused to reduce the price of Domestic Airfare notwithstanding the recent significant drop in Defendants' operating costs due to the plunge in the cost of jet fuel.

51.     The illegal combination and conspiracy alleged herein has had the following effects, among others:

a. The capacity of defendants' domestic air transportation services and therefore the price of Domestic Airfare were in fact artificially stabilized and fixed *in furtherance* of the defendants' conspiracy to do so.

b. Price competition in domestic airfare has been restrained, suppressed and/or eliminated;

c. The price for domestic air transportation services sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels; and

d. Those who purchased domestic air transportation services have been deprived the benefits of free and open competition.  During the Class Period, Plaintiff and members of the Class purchased domestic air transportation services from Defendants and their co-conspirators.

52.    As a direct and proximate result of Defendants' illegal contract, combination and conspiracy, Plaintiff has been injured and will continue to be injured in his business and property by paying more for domestic air transportation services from Defendants and their co-conspirators than she would have paid and will pay in the absence of the combination and conspiracy.

53.    Plaintiff and the members of the Class request three times their actual damages that resulted from Defendants' illegal conspiracy. The total amount of damages is presently undetermined. Such determination will require discovery.

54.    Plaintiff and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**<u>Second Claim for Relief</u>**
**(Violation of Section 16720 of the California Cartwright Act)**

55.    Plaintiff realleges and incorporates each and every allegation set forth in the preceding paragraphs of the Complaint and further alleges as follows:

56.    Beginning at a time presently unknown to Plaintiff but at least as early as January 1, 2011, and continuing thereafter at least up to the present, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 *et seq*. of the California Business and Professions Code.  Defendants have acted in violation of Section 16720 *et seq*. to fix, raise, stabilize and maintain prices of Domestic Airfare at supra competitive prices.

57.    In formulating and effectuating the continuing policies, agreements, contracts,

**14**

understandings, combinations and/or conspiracy, Defendants and their co-conspirators did those things that they conspired to do, including but not limited to those acts, practices and course of conduct set forth in this complaint, such as the following:

    a. Agreed to and did in fact fix, raise, maintain and stabilize the capacity and price of airfare in California;

    b. Agreed to and did in fact allocate geographic markets and customers for domestic air transportation services in California;

    c. Participated in meetings, phone conferences and other communications to exchange information used by Defendants to formulate and implement their contact, combination and conspiracy to fix, raise and maintain prices of Domestic Airfare and allocate markets and customers for domestic air transportation services in California;

    d. Signaled and communicated the formulation and implementation of their contract, combination and conspiracy to fix, raise and maintain prices of Domestic Airfare and allocate markets and customers for domestic air transportation services in California;

    e. Agreed to develop, implement, monitor, police and enforce illegal "capacity discipline" agreements designed to create an artificially high price for Domestic Airfare in California;

    f. Shared and exchanged information on capacity and price of Domestic Airfare to the detriment of consumers in California;

    g. Implement and monitor the conspiracy amongst the Defendants to ensure full compliance with the anticompetitive conduct and to punish violators;

    h. Restrained and restricted the supply of seats in order to restrain and restrict supply and therefore artificially inflate the price of Domestic Airfare in California.

    i. Refused to reduce the price of Domestic Airfare notwithstanding the recent significant drop in Defendants' operating costs due to the plunge in the cost of jet fuel.

    58.    The illegal combination and conspiracy alleged herein has had the following effects, among others:

a. The capacity of defendants' domestic air transportation services and therefore the price of Domestic Airfare were in fact artificially stabilized and fixed *in furtherance* of the defendants' conspiracy to do so.

b. Price competition in domestic airfare has been restrained, suppressed and/or eliminated in California;

c. The price for domestic air transportation services sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in California; and

d. Those who purchased domestic air transportation services have been deprived the benefits of free and open competition.  During the Class Period, Plaintiff and members of the Class purchased domestic air transportation services from Defendants and their co-conspirators in California.

59.    As a direct and proximate result of Defendants' illegal contract, combination and conspiracy, Plaintiff has been injured and will continue to be injured in his business and property by paying more for Domestic Airfare than she would have paid in the absence of the combination and conspiracy.

60.    Plaintiff and the members of the Class request three times their actual damages that resulted from Defendants' illegal conspiracy. The total amount of damages is presently undetermined. Such determination will require discovery.

61.    Plaintiff and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## FRAUDULENT CONCEALMENT

61.    Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and the Class.

63.    Plaintiff and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until the governmental investigations of their actions were first announced. Nor could Plaintiff and the members of the Class have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through

1
2

various other means and methods designed to avoid detection. The conspiracy was by its nature self-concealing.

3
4

64.     Defendants engaged in a successful price-fixing conspiracy with respect to domestic air transportation services, which they affirmatively concealed, in at least the following respects:

5
6

a.     By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

7
8
9

b.     By giving false and perpetual reasons for their domestic airfare price increases during the relevant period and by describing such increases falsely as being the result of external costs, rather than collusion.

10
11
12

65.     As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiff and the members of the Class.

13

## PRAYER FOR RELIEF

14

WHEREFORE, Plaintiff prays as follows:

15
16

A.     That the Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

17
18
19

B.     That the Court adjudge and decree that the unlawful conduct, contract, combination and conspiracy alleged herein constitutes a *per se* unreasonable restraint of trade in violation of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3 and Sections 4 and 26 of the Clayton Act;

20
21
22

C.     That the Court adjudge and decree that the unlawful conduct, contract, combination and conspiracy alleged herein constitutes a *per se* unreasonable restraint of trade in violation of Section 16720 et seq. of the California Business and Professions Code;

23
24
25

D.     That judgment be entered against Defendants, jointly and severally, and in favor of Plaintiff and the Class she represents for damages as allowed by the Sherman Act, Clayton Act and Cartwright Act, as may be determined to have been sustained by them, together with costs of suit, including reasonable attorneys' fees;

26
27
28

E.     That Defendants, their co-conspirators, successors, transferees, assigns, parents, subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on behalf of Defendants, or in concert with them, be

permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting or following any practice, plan, program or design having a similar purpose or effect in restraining competition;

F.    That the Court award Plaintiff and the Class she represents their attorneys' fees and costs, and pre-judgment and post-judgment interest as permitted by law; and

G.    That the Court award Plaintiff and the Class she represents such other and further relief as may be necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: September 15, 2015

By:    ____/s/ Lawrence Papale_____
Lawrence G. Papale (67068)
LAW OFFICES OF LAWRENCE G. PAPALE
1308 Main Street #117
St. Helena, CA 94574
Telephone: (707) 963-1704
E-mail: lgpapale@papalelaw.com


Joseph M. Alioto (42680)
ALIOTO LAW FIRM
225 Bush Street, 16th Floor
San Francisco, CA  94104
Telephone:  (415) 434-8900


Robert G. Methvin, Jr., Esq.
James Terrell, Esq.
McCALLUM, METHVIN & TERRELL, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205

Attorneys for Plaintiff Linda Williams